LEONARD J. LYNCH, Appellant, *v.* EDWARD C. JOHNSON, Respondent.

Sections 292 and 294 of the Code furnish a substitute for the creditor's bill, as formerly used. The service of the order, under those sections, takes the place of the commencement of a suit under the old system, and gives the judgment creditor the priority of a vigilant creditor, and a lien upon the equitable assets of the debtor.

A final order of a judge, in proceedings under section 294, requiring the debtor of a defendant to pay his debt to the plaintiff, renders this lien effectual; and payment, or liability to pay, in pursuance of such order, is a defence to the debtor in an action against him by his creditor, or by an assignee who is not shown to be a *bona fide* purchaser for value of the claim, prior to the accruing of the lien.

(Argued May 12, 1871; decided September term, 1871.)

APPEAL from order of the General Term of the Supreme Court in the first judicial district, reversing a judgment in favor of plaintiff, entered upon a verdict, and reversing an order denying a motion for a new trial, and granting a new trial.

This was an action for the recovery from the defendant, as surviving partner of the firm of Johnson & Bliss, of the balance of $911.50 due to Henry C. Acker for services rendered to them as clerk, and the further sum of fifty-eight dollars collected by the said defendant as such surviving partner for the said Acker, both of which sums the plaintiff in his complaint alleges to have been assigned by Acker to him, in and by an assignment duly executed to him, on the 1st day of March, 1863, for a valuable consideration. The defendant first put in issue the execution of such assignment generally, and then its execution at the time of its date. He then, after admitting his indebtedness to Acker of the said sum of fifty-eight dollars, collected for him as above stated, and the further sum of $127 for the balance of his share of the profits on the purchase and sale on joint account of a quantity of lemons, amounting in all to

$185, sets up the commencement of proceedings for the examination of the defendant as a debtor to Acker in relation to such indebtedness, before Judge INGRAHAM, one of the justices of the Supreme Court, on the return of an execution unsatisfied, issued upon a judgment in that court in favor of Thomas Ryer and William Ryer against said Acker for $1,191.30, and an order made thereon by the said justice on the 16th day of March, 1863, by which defendant was directed to pay the said sum of $185, to the said Thomas and William Ryer or their attorney, to be credited on their said judgment.

On the trial of the issues at the circuit, the plaintiff introduced an assignment to him from the said Acker, bearing date, and duly acknowledged before a notary public, on the 5th day of March, 1863, to him (the plaintiff) for the consideration of one dollar, assigning and transferring all the rights, claims and interests he had against the firm of Johnson & Bliss, and against Edward C. Johnson personally, to have and to hold the same for himself at his own risk, and then rested.

The following facts then appeared by the evidence on the part of the defendant Johnson: that an order for his examination, bearing date the 4th day of March, 1863, and the affidavit on which it was granted, were served upon him on that day; that the said order contained a direction for the service thereof and of said affidavit on Acker, and proof of such service on the 6th day of March was given.

Johnson was examined under the order on the 16th day of the same month of March, being the return day thereof, and an order was thereupon made on the same day directing him to pay the said debt of $185 to the said Thomas and William Ryer, to be credited on their judgment, as alleged in the answer of the defendant.

The said examination was had in the presence of Acker and his attorney, and nothing was said by either of them about an assignment of Johnson's debt to the plaintiff. Acker was not examined on that proceeding.

It appeared, by the cross-examination of Johnson by the plaintiff, that he had not paid over the money as directed by the order, but had given notes over due therefor, as security, after this suit was commenced. Those notes were not indorsed by Johnson, and he thought they had not been paid.

After this evidence was given, the said Henry C. Acker was examined by the plaintiff in relation to the execution of the assignment.

His testimony on that question is sufficiently stated in the opinion of the chief commissioner.

At its close, the judge charged the jury "that if the assignment by Acker was executed on March 5, 1863, on or before the service, on March 6, 1863, on him of the order of Judge Ingraham of March 4, 1863, the plaintiff was entitled to recover." To which charge the defendant duly excepted.

He also instructed them that the amount the plaintiff, in such case, was entitled to recover, was the said sum of $189.05, with interest, to which the defendant also excepted.

*Theodore D. Dimon* for appellant. (Points not received by reporter.)

*John E. Parsons* for respondent. Notice to the judgment debtor was not necessary. (*Keness* v. *Harding*, 4 How., 178; *Foster* v. *Prince*, 8 Abb., 407; S. C., 18 How., 258, N. Y. Gen. T.; *Seeley* v. *Garrison*, 10 Abb., 460; *Holmes* v. *Jordan*, 15 Abb. P. R., 410, note; *Parker* v. *Hunt*, id.; *Ward* v. *Beebe*, 15 Abb. P. R., 372; affirmed in 17 Abb., 1; *Gibson* v. *Haggerty*, 37 N. Y., 554.) The issuing and service of the order created a lien upon the debt, which was perfected by the order directing payment to the Ryers. (*Edmonston* v. *McLoud*, 16 N. Y., 544.) Plaintiff took subject to this lien. (*Bush* v. *Lathrop*, 22 N. Y., 535.)

LOTT, Ch. C. It is unnecessary to consider the effect of the order made by Justice Ingraham, directing the defendant in this action to pay the amount of his indebtedness to Acker

over to Thomas and William Ryer, his judgment creditors. The plaintiff has failed to establish any right to that sum, and therefore his recovery of it was erroneous. His own testimony clearly established the fact that the assignment under which he claimed his title was not delivered to Lynch, the plaintiff.

He did, it is true, in answer to the question by his counsel, whether the signature to the assignment was his, say that it was; that it was executed in New York on March 5; that he went before a notary and executed it on that day; and he afterward stated that the assignment was executed early in the morning, about nine o'clock; but his cross-examination disclosed the fact that he did not see Lynch, the plaintiff, and that no one was present on his behalf, either at the time the assignment was signed or when it was acknowledged before the notary. He said, on his direct examination, in addition to what he testified, as above stated, in relation to the execution of the assignment, that he, at that time, resided in Syracuse, and that he had come to New York the night before the 5th of March "on some private matters, and to see about this claim," and that he left, on his return to Syracuse, "about noon, eleven o'clock," of the 5th of March, and reached there that night about eight.

On his cross-examination he said that he "got to the city of New York on the morning of the fifth of March, and was there three or four hours;" that the private matters which he had come down about related to his mother's affairs, and also to his own; that Mr. Marcou, his attorney at the time, was one of the persons he saw in reference to them; and on being asked whether he could recollect of seeing anybody else, he answered, "no special persons," and afterward in answer to a question, whether he remembered that he saw anybody else on business which brought him to New York, but Mr. Marcou, he said "I think not." He then, after stating that his business with Mr. Marcou "was in relation to this claim against Mr. Johnson," "to try and collect it;" on being asked whether he made any effort to

collect it, he answered, "nothing more than what I had to do with Mr. Marcou."

After stating that he had made an effort with him ·to collect it, he was asked, what was the effort he made; he answered: "I stated to Mr. Marcou the facts in the case, and he advised me to make an assignment." He then, on being asked the question, "that is the effort you made to collect it, by making an assignment?" answered, "yes, sir." He was then asked, if he could remember anybody but Mr. Marcou, whom he saw at that time, whom he knew, and his answer was, "I don't know as I can," and to the question, "You can't recollect anybody whom you saw, whose name you recollect but Mr. Marcou?" He answered: "Not positively; I can't." And after stating that the sheriff served the papers on him, in the proceedings for the examination of Johnson, about the middle of the day, or the next day after he got home, he was asked this question: "Will you swear positively that it was on the fifth of March on which you executed this assignment?" He answered: "I will swear positively, that to the best of my recollection it was."

He was then asked by the court, "Had you left that in his hands for collection previous to the execution of the assignment?" And he said in reply, "I had written to Mr. Marcou about it."

He was then further examined on behalf of the plaintiff, and stated that Mr. Marcou was attending to a real estate suit then pending, in which his mother was interested, and which he had for more than two years been conducting, and that he went to see him about that suit, at the same time he saw him relative to his claim against Johnson. He also stated, in answer to different questions, that Lynch, the plaintiff, was his brother-in-law, to whom he owed money; that he could not recollect how much, but he thought it was nearly $100, and that it was on that account the assignment was made to him.

Neither Lynch, the plaintiff, nor Mr. Marcou were examined, and no other evidence than I have above referred

to was given in relation to the execution of the assignment. That does not warrant the inference that it was ever delivered to or accepted by Lynch, the plaintiff, or that it ever in fact came to his possession, or even his knowledge.

No presumption of such possession or knowledge can, under the circumstances disclosed on the trial, be drawn from its production at that time. It does not appear that the plaintiff was present. Mr. Marcou was his attorney on the record. The complaint is signed by him, and not by the plaintiff, and it is not verified by either of them or by any other person. These facts, in connection with Acker's testimony that the effort he made to collect the claim was by making the assignment under the advice of Mr. Marcou, to whom he had stated the facts, and in answer to a question by the court that he had written to Mr. Marcou about its collection, tend to show that Mr. Marcou was in fact his attorney and counsel, and not of Lynch, in this action. At all events, I find nothing to justify the conclusion that the assignment was ever delivered to Lynch or to any other person for him, and the judge erred in submitting the question to the jury.

The verdict was without evidence to support it, and the judgment entered thereon and the order made at Special Term denying a new trial were properly reversed.

It follows that the order of reversal granting a new trial must be affirmed, with costs and judgment absolute, must be rendered against the appellant with costs.

EARL, C. The proceeding under section 294 of the Code was completely commenced by the service of the order on Johnson, the debtor of the judgment debtor, and all notice of the proceeding to Acker could have been omitted. (*Gibson* v. *Haggerty*, 37 N. Y., 555.) The direction that a copy of the affidavit and order should be served upon Acker was simply designed to give him notice of the proceeding, and its object or purpose was not to lay the foundation of any proceeding against him personally. What, then, was the effect of the service of the order upon Johnson?

Proceedings under sections 292 and 294 of the Code are parts of the same scheme for the collection of debts inaugurated by the Code. These sections furnish a simple substitute for the creditor's bill, as formerly used in Chancery. The commencement of the creditor's suit in Chancery gave the creditor at once a lien upon the equitable assets of the judgment debtor. (*Storm* v. *Waddell*, 2 Sandf. Ch., 494; *Brown* v. *Nichols*, 42 N. Y., 26.) He was rewarded as a vigilant creditor, the commencement of his suit being regarded as an actual levy upon the equitable assets of the debtor. Under sections 292 and 294, the service of the order takes the place of the commencement of the suit under the old system, and should give the judgment creditor the priority of a vigilant creditor, and a lien upon the equitable assets of his debtor. (*Edmonston* v. *McLoud*, 16 N. Y., 544.) This lien was rendered effectual by the final order of the judge, directing the defendant to pay his debt to the plaintiff in the judgment against Acker; and payment, or a liability to pay, in pursuance of that order, is a defence to this action, the plaintiff not having shown himself a *bona fide* purchaser of the claim against the defendant for value.

The order of the General Term should be affirmed, and judgment absolute should be rendered against the plaintiff, with costs.

LEONARD, HUNT, and GRAY, CC., concur with EARL, C.

GRAY, C., concurs with LOTT, Ch. C.

LOTT, Ch. C., expresses no opinion as to question discussed by EARL, C.

Order of General Term affirmed, and judgment absolute against plaintiff, with costs.