52 N.J. Super. 169 (1958)
145 A.2d 44
RICHARD A. ENCH, PLAINTIFF-RESPONDENT,
v.
A. LEONARD BLUESTEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1958.
Decided October 6, 1958.
*171 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Joseph M. Jacobs argued the cause for defendant-appellant (Mr. Leonard A. Bluestein, attorney pro se).
Mr. Joseph N. Marotta, Jr., argued the cause for plaintiff-respondent (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. John W. Griggs on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
The defendant appeals in this breach of contract action from a judgment entered pursuant to a unanimous jury verdict for the plaintiff in the Passaic County District Court.
Plaintiff Ench operates a construction business and in 1954 was at work on a project in Glenside, Pennsylvania. At that time he was represented by an attorney, the defendant. In February 1954 Ench had borrowed $1,000 from one Donohue to defray expenses on the Glenside project and had given Donohue a check post-dated to March 17, 1954. The loan not having been repaid, Donohue's representative wrote to Ench on May 10, 1954 that he was "not going to sit still on that check." On the same date, plaintiff responded by letter that the failure of the township (apparently *172 Glenside) to pay moneys owed him had held up payment of his bills, that his bonding company had unjustifiably refused to pay the Donohue and other claims, but that he had instructed his attorney to institute action against the bonding company to recover such claims.
Ench testified that on May 12, 1954, at his office in Paterson, he handed a $1,000 check, made payable to himself, to Bluestein, with instructions to "put this check in the trust account and pay the money to James Donohue." His grievance in this action is that Bluestein never paid Donohue, with the result that an assignee of Donohue's estate brought suit against plaintiff in 1956 on the unpaid debt and recovered $1,000 plus costs of $41.84. His effort to implead Bluestein as a third-party defendant in that action having failed on motion of the plaintiff therein, Ench paid that judgment himself. He now contends that such payment represents his damages consequent upon defendant's breach of agency.
Defendant Bluestein denied ever having received instructions from Ench to pay off Donohue with the $1,000 check. He testified:
"Well, he came in the next morning after he had gotten a check and gave it to me and told me he needed five hundred dollars that day for the payroll and there was a payment due on his second mortgage on Water Street which Jack Abramowitz was attorney for and he was in the midst of foreclosing that and it was under sheriff's sale, that had to be met. He said apply this to that and that was it."
Bluestein claimed, then, that after May 12 he had given $500 in cash to plaintiff or his sister to meet Ench's payroll and had used the other $500 to reimburse himself for a $500 check given on May 13 to the attorney representing the second mortgagee. This issue of the money having been spent for plaintiff's other debts was raised by the defendant in his answer.
Corroborative of the defense that no specific instructions to pay Donohue had been given by Ench was the testimony of attorneys Rowitz and Weisser. Rowitz, representing *173 Donohue in collecting the debt from Ench, testified that when he had seen Ench, in July 1956, to make arrangements with him to pay off the debt, Ench never mentioned that Bluestein was connected with the Donohue transaction. And Weisser, who had heard most of the conversations between Rowitz and Ench with respect to the Donohue debt, testified that he "never heard Mr. Bluestein's name mentioned."
Ench denied that Bluestein spent this particular $1,000 for his, Ench's, benefit. He denied having received $500 from Bluestein for his payroll. And he testified that, while $500 toward the second mortgage had indeed been paid by Bluestein, that payment was part of a course of dealing between these two parties and had been made not from the $1,000 in question, but from a $6,850 fund entrusted by plaintiff to defendant on April 29, 1954.
At the end of the plaintiff's case defendant moved for dismissal on the ground that plaintiff had not established his damages. This was denied. There was no motion for dismissal at the end of the entire case.
Without objection by defendant's counsel, the trial judge charged the jury: "If you find in favor of the plaintiff, your verdict will be for the sum of $1,041.84." Significantly, the verdict did not state a finding on damages; it was merely "in favor of the plaintiff." The court then announced the verdict as "for the plaintiff in the sum of $1,041.84."
Bluestein appeals from the judgment below on the following grounds: (1) since he disbursed the money for Ench's benefit, Ench has suffered no actual damages; therefore, to allow the judgment to stand will result in Ench's being unjustly enriched to the extent of $1,000; (2) the verdict was contrary to the weight of the evidence; and (3) an exhibit which had never been received into evidence was allowed to go to the jury room.
It is an accepted principle of law that in all litigation, of whatever kind, the law seeks to compensate for the wrongs complained of, so as to restore the injured party to his former status. Except where punitive damages are *174 permitted, there is no allowance of more than nominal damages in a case where no actual damages are proven. 15 Am. Jur., Damages, § 3, pp. 3, 4; 25 C.J.S. Damages § 3, p. 461; Skillen v. Eagle Motor Co., 107 N.J.L. 211, 213 (Sup. Ct. 1930); Weiss v. Revenue Building & Loan Ass'n, 116 N.J.L. 208 (E. & A. 1935); Borbonus v. Daoud, 34 N.J. Super. 54, 60, 61 (Ch. Div. 1955).
The paramount object of litigation is to accomplish justice as between the parties. In the present case, even if it were assumed that plaintiff instructed defendant to use the $1,000 check to discharge the Donohue debt and defendant failed to do so, but applied the money in part to provide plaintiff with $500 for his payroll and in part to meet plaintiff's admitted pressing obligation on a mortgage, as testified by defendant, it would obviously be unjust now to permit recovery of a $1,000 judgment by plaintiff to stand against the defendant. The injustice of the result can be seen from either of two approaches, and it does not matter which is deemed more appropriate in principle.
(a) The funds having been used to pay other acknowledged and immediate obligations of plaintiff (as we are assuming is the fact), plaintiff was not damaged by the defendant's assumed violation of his principal's instructions. 2 Am. Jur., Agency, § 278, p. 222; 3 C.J.S. Agency § 147, p. 29; cf. Porter v. Woodruff, 36 N.J. Eq. 174, 186 (Ch. 1882); Bourquin v. Atlanta State Bank, 107 Neb. 811, 186 N.W. 986 (Sup. Ct. 1922).
(b) If plaintiff is regarded as having been technically damnified by defendant's failure to use the $1,000 as instructed, defendant's application of the funds to other obligations of plaintiff should give defendant a quasi-contractual offset in respect to the latter to avoid the unjust enrichment which otherwise would fall to the plaintiff at the expense of the defendant. Cf. Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (1954); George M. Brewster & Son, Inc., v. Catalytic Const. Co., 17 N.J. 20, 28 (1954). If defendant disposed of the $1,000 in the manner he claims, it would be highly inequitable for plaintiff not to indemnify him *175 therefor to the extent of an offset against his technical loss in respect to his liability on, and his payment of, the Donohue judgment. Restatement, Agency, § 439 (e), p. 1024; 3 Scott, Trusts (2d ed. 1956), § 245.1, p. 1970. Cf. Taylor v. Morris, 1 N.J. Super. 410, 416 (Ch. Div. 1948).
At the most, therefore, plaintiff's just net damages, assuming the state of facts hypothesized above, would be limited to the $41.84 in costs to which plaintiff was subjected in the Donohue action. See Verhagen v. Platt, 1 N.J. 85, 91 (1948). We are not implying that an agent may with impunity disregard his principal's instructions or that sanctions of other kinds might not attend such action. We are here concerned only with the facts of the particular case before us.
The question nevertheless arises, however, as to whether the judgment for plaintiff should be reversed in view of the failure of the defendant to raise the issue of lack of showing of damages or equitable setoff by motion at the end of the case, or by request to charge or objections to failure of the trial judge to charge the jury as to these matters. It is clearly true, ordinarily, that issues not raised at trial may not be urged upon appeal. Roberts Electric, Inc., v. Foundations & Excavations, Inc., 5 N.J. 426 (1950).
In the present case it is not to be gainsaid that defendant should have requested the court to charge the jury explicitly that if it believed defendant's testimony as to what he had done with the $1,000, it should not allow plaintiff any recovery beyond nominal damages, or for the costs on the Donohue judgment, even if it found that plaintiff had in fact instructed defendant to use the money to pay the Donohue debt. Defendant neither did this nor took exception to the failure of the trial judge to give such instructions or in any other manner charge the jury concerning its function if it found as a fact that defendant had applied the funds to satisfaction of plaintiff's debts other than to Donohue.
Yet, on the other hand, the factual issue as to what defendant had done with the $1,000 in question was tried *176 without objection. See R.R. 4:15-2. Moreover, the answer states that defendant used the money to pay "other debts of the plaintiff or of his affiliated companies." Nevertheless the charge of the trial judge to the jury posed, in the first instance, solely the issue as to whether the arrangements between plaintiff and defendant were that defendant should use the $1,000 to pay the Donohue debt. Under the charge, the jury was not required to resolve the factual issue as to whether defendant had applied the money for the benefit of plaintiff in other respects unless they first found in favor of defendant on his denial of the charge that he was instructed by plaintiff to apply the money to the Donohue obligation. It would consequently clearly appear that the meritorious alternative defense asserted by defendant and discussed above, though actually tried, was never submitted to the jury. This, in our opinion, was so serious a departure from the proper functioning of the adjudicative process as to require a new trial as a matter of plain error. R.R. 1:5-3 (c); In re Stern, 11 N.J. 584, 590 (1953); Ford v. Reichert, 23 N.J. 429, 434 (1957); Maccia v. Tynes, 39 N.J. Super. 1, 6 (App. Div. 1956). Cf. Kreis v. Owens, 38 N.J. Super. 148, 155 (App. Div. 1955).
Aware that the defendant's counsel did not request the trial judge to charge on nominal or slight compensatory damages and that he did not object to the charge as given, the procedure contemplated by R.R. 4:52-1, we nevertheless find that the jury verdict, which the trial judge found to be in the sum of $1,041.84, was the product of plain error within R.R. 1:5-3 (c). In our view, the failure of counsel to object to this aspect of the charge or to request a charge on nominal damages is readily understandable. Indeed, defendant's counsel had repeatedly attempted to explain to the court in the presence of the jury that his defense was based, in large part, on plaintiff's failure to prove damages. Yet the trial judge, on every occasion, closed his mind to any other issue in the case but the violation of instructions. Compare Gebhardt v. Public Service Coordinated Transport, 48 N.J. Super. 173, 184 (App. Div. *177 1957). Under such circumstances and in view of the other deficiencies in the charge discussed above, it is apparent that the jurors failed to comprehend the real issues involved; their confusion is indicated by their return from the jury room to ascertain who was the plaintiff and who, the defendant.
Since we have concluded that there must be a new trial for the reasons already stated, we have no occasion to consider the second ground of appeal, that the verdict was against the weight of the evidence. It is our opinion, however, that the jury could have found for either party, on the evidence, on the issue as to what plaintiff's instructions were to defendant in reference to disposition of the $1,000.
Defendant submits as an additional ground for reversal that a letter, written by the defendant to Ench's bonding company, and marked for identification at the trial, was allowed to go to the jury room, although plaintiff had never formally offered it. It is obvious from our examination of the record that the failure to mark the exhibit in evidence was merely an oversight. After the charge to the jury, the court asked both counsel to "check all exhibits." The trial judge ruled that the failure of counsel to take advantage of the opportunity to do so barred his claim.
In our opinion, the letter in question could not have exerted any very direct effect on the jury's deliberations. Thus we put to one side those cases holding that reversal is warranted where the extraneous matter had a tendency or a capacity to influence the jury. Panko v. Flintkote Co., 7 N.J. 55 (1951); State v. Kociolek, 20 N.J. 92 (1955); Palestroni v. Jacobs, 10 N.J. Super. 266 (App. Div. 1950).
Exhibits are allowed to go to the jury room only when they have been received into evidence. R.R. 4:52-2; McCormick, Evidence (1954), § 184, p. 394.
Ordinarily, the granting or denial of a motion for a new trial is within the sound discretion of the trial judge. "When, however, a new trial is sought because a jury consulted extraneous matter, another element has to be considered; a new trial shall be granted or refused `with a *178 view, not so much to the attainment of exact justice in the particular case, as to the ultimate effect of the decision upon the administration of justice in general.'" Palestroni v. Jacobs, supra, 10 N.J. Super. at pages 273-274. Cf. State v. Kociolek, supra.
The question arises then whether the administration of justice in future litigation will be adversely affected by refusing to reverse on this ground. We do not think it will be. To the contrary, affording parties a new trial for such an irregularity may invite counsel conveniently to overlook extraneous matter in the exhibits and thereby to gamble on the verdict. That practice is to be discouraged. Murphy v. Zimmerman, 9 N.J. Misc. 728 (Sup. Ct. 1931). We do not mean to imply that counsel here knowingly permitted the letter to be taken into the jury room. We hold only that where, as here, counsel has had an opportunity to remedy the defect by timely and careful inspection, he will not be heard to complain. Norsdick v. Baxter, 64 N.J.L. 530 (Sup. Ct. 1900). Cf. Palestroni v. Jacobs, supra, 10 N.J. Super. at page 274.
Reversed and remanded for a new trial.