FRED R. OPPENHEIMER, Appellant-Respondent, v DRESDNER BANK A. G., Respondent-Appellant.

Second Department, December 31, 1975

*Leon Rock* for appellant-respondent.

*Graubard Moskovitz McGoldrick Dannett & Horowitz (John A. Young* and *Bardin Levavy* of counsel), for respondent-appellant.

MARTUSCELLO, J. The plaintiff commenced this action by service of a summons and a motion for summary judgment in lieu of a complaint to recover the balance due on a promissory note, with interest. He bases his claim upon Dresdner Bank A. G.'s (Dresdner) alleged failure to make full payment of an installment due on March 31, 1972, pursuant to the terms of a nonnegotiable promissory note made by it on September 29, 1970, which note is payable to Transcontinental Motors Inc. (Transcontinental), the plaintiff's assignor.

The primary issue is whether the terms of the promissory note, and of an underlying agreement pertaining thereto, bar Dresdner from deducting from the payment of the afore-mentioned installment the amount it had been required to pay in accordance with a valid order of attachment and collection served upon it.

Transcontinental, a New York corporation, and Audi NSU Auto Union A. G. (Audi), a German corporation, had been engaged in litigation in Germany. On September 29, 1970 they entered into a settlement agreement which provided that Audi would make certain installment payments to Transcontinental and that Audi would cause Dresdner, a German banking corporation, to issue a note obligating itself to make the payments to Transcontinental.

When Dresdner was requested by Audi to issue the note, it

was informed that Transcontinental had drafted its own form of agreement; Dresdner was asked to follow that form precisely; and it did so. On October 12, 1970, the nonnegotiable, partially-assignable note of the Frankfurt office of Dresdner was delivered to Transcontinental.

The note provided that Dresdner would pay $298,000 in listed installments; that Dresdner would "pay to [Transcontinental] unconditionally, irrevocably, without [Dresdner's] right to set-off or otherwise deduct any bank charges or any amounts for any reason whatsoever"; that "in the event of default in any one payment, the entire obligation remaining unpaid shall immediately become due and payable and suit may be brought in the jurisdiction of the Courts in New York"; and that Transcontinental could assign its rights under certain limited conditions.

In October, 1970 the first of the scheduled payments was duly made by the transfer of $62,000 to Transcontinental's account at Bankers Trust Company in New York City. On December 22, 1970, prior to the due date of the next installment, the office of the court cashier, Frankfurt/Main, Germany, served an order of attachment and collection on Dresdner, ordering Dresdner to pay to it so much of the moneys payable under the note as would be required to satisfy Transcontinental's court clerk's costs and collection costs of 40,933.20 DM, pursuant to German law. Transcontinental had incurred this liability as a result of its litigation with Audi.

On January 15, 1971 Transcontinental protested that it would not consent to Dresdner's honoring of the order. In Transcontinental's letter, which was signed by the plaintiff, its president (and thereafter its successor in interest on the installment payments), no surprise was expressed as to the levy and no question was raised about either the validity of the court cashier's claim for court costs or his right to execute upon the note. It was nevertheless stated in the letter that Dresdner's compliance with the order could not be used as a basis for any setoff or deduction.

On January 25, 1971 Dresdner filed an objection to the order of attachment and collection in the Frankfurt District Court. That filing stayed enforcement of the order; the second payment of $62,000 was duly transferred to Transcontinental's account at Bankers Trust Company. On January 29, 1971, the office of the court cashier collected 12,000 DM from Audi,

which was secondarily liable for the court costs, and reduced the amount of the order of attachment and collection to 28,933.20 DM. On March 1, 1971 the District Court dismissed Dresdner's objection to the order of attachment and collection, finding that all of the grounds for a valid German attachment had been fulfilled. Dresdner immediately appealed to the Frankfurt Superior Court. It gave notice of that appeal to Transcontinental. On July 29, 1971 Transcontinental assigned its remaining interest in the note to the plaintiff. The plaintiff, in turn, on October 27, 1971, assigned all of his interest in the note to Security National Bank, except for the third payment which was to be for $15,500 and was scheduled to be made on March 31, 1972. On December 1, 1971 the Superior Court of Frankfurt/Main affirmed the order of the District Court, thus making final the order of attachment and collection.

On February 16, 1972 Dresdner advised the plaintiff that it would be required to honor the order of attachment and collection on March 31, 1972, when the next payment became due. The plaintiff again noted his objection to any deduction from that $15,500 installment. On March 22, 1972 the office of the court cashier officially notified Dresdner that the order of attachment and collection had become final and that it was to be met out of the payment due March 31, 1972. On the latter date Dresdner made payment of the $15,500 as follows: $9,133.53 was remitted to the office of the court cashier and $6,366.47 was remitted to the plaintiff's account.

Between April, 1972 and December, 1973, the final seven payments were made and accepted by the plaintiff's assignee, Security National Bank. During this period no claim was made by Security National Bank, plaintiff or Transcontinental of any default with respect to any of the payments under the note. However, in January, 1974, the plaintiff again raised the question of the reduced amount he received out of the March 31, 1972 installment.

On January 29, 1974 this action was commenced by service of a summons and motion for summary judgment in lieu of a complaint, pursuant to CPLR 3213. The plaintiff seeks to recover damages of $24,691.05, which includes the amount he calculates as being the statutory interest on the declining balance from March 31, 1972, when Dresdner allegedly defaulted, through December, 1973, when the last payment was made. Dresdner cross-moved for summary judgment pursuant

to CPLR 3212. The Special Term denied both the motion and the cross motion.

The settlement agreement between Transcontinental and Audi provided as follows:

"4. The above payments shall upon the Closing becoming the absolute irrevocable obligations of the Dresdner Bank and NSU [Audi], jointly and severally, and shall be paid timely and without set-off or deduction of any nature or description even if Transcontinental or any other party should incur future liabilities to NSU, the Dresdner Bank or any other party, regardless of reason, it being the intention that any claims or differences which might arise shall be dealt with and handled separately and independently from such payments and shall not be cause for delay in or withholding a payment. In the event of default in any one payment, the entire obligation remaining unpaid shall immediately become due and payable, and suit may be brought in the jurisdiction of the courts in New York. * * *

"12. The parties agree that if any court makes claim against either party on account of costs to be paid to such court for court fees, such party shall not have any right of action over against the other for reimbursement * * * nor shall it be the basis for any withholding, set-off, deduction or adjustment of the payments provided for herein."

The plaintiff contends that the language of the note and settlement agreement is clear and unambiguous; that the parties spelled out their intent that under no circumstances could payment be less than provided for in the note; and that Dresdner waived any right to make setoffs or deductions for any reason whatsoever.

Dresdner counters that the first above-quoted paragraph was intended only to prevent it from asserting a banker's lien for cable charges, currency exchange charges, etc., against the scheduled payments.

The Special Term's denial of summary judgment to both parties was based upon its conclusion that the particular language in the decision of the Frankfurt Superior Court (in affirming the District Court's dismissal of defendant's objection to the attachment) raised a question "as to the effect of the order of attachment". The Frankfurt court's decision, although holding the attachment valid, contained the following: "Should the appellant [Dresdner], as feared by it, be again proceeded against under US law, it is at liberty here to refuse

the payment and to permit itself to be sued or else to settle the matter with the Debtor in the internal relationship."

The test on a motion for summary judgment is whether there are factual issues to be resolved by a jury (CPLR 3212, subd [b]). To defeat summary judgment, the opponent must present evidentiary facts sufficient to raise a triable issue of fact (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395). After having carefully reviewed the record, I am of the view that there is substantial agreement as to the salient facts by both sides and that the Special Term misconstrued the language of the German court. Thus, there is no genuine issue of fact remaining. The decision of the German court, when coupled with the affidavit of Dresdner's expert on the law of West Germany, clearly shows that Dresdner had no alternative but to honor the order of attachment and collection.

The determination of this case must necessarily rest upon the construction of the agreement and note. The courts have declared on numerous occasions that it is the responsibility of the court to interpret written instruments (Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285; Bethlehem Steel Co. v Turner Constr. Co., 2 NY2d 456; 4 Williston, Contracts [3d ed.], §§ 600, 601).

The language employed in the agreement and note cannot operate to prevent a third party's valid levy upon the debt. Indeed, Dresdner's officer asserted in his affidavit that such language is not understood in the banking community to have the effect the plaintiff places upon it. The plaintiff disputes this, but offers no evidence to support his position that the custom in the banking community is otherwise.

Apart from this, the meaning ascribed to such language by the plaintiff would be against public policy and void. In United States v Manufacturers Trust Co. (198 F2d 366, 369), a case in which the garnishee bank resisted garnishment under the Internal Revenue Code on the grounds that its contract with its depositor precluded garnishment, the court quoted the following language from First Trust Co. of Omaha v United States (1 F Supp 900, 904): "Agreements entered into between individuals may not prevail as against the provisions of the * * * laws if in conflict therewith."

The validity and effect of an order of attachment and collection is determined under the law of the forum in which it is issued (Harris v Balk, 198 US 215; Morris Plan Ind. Bank of N. Y. v Gunning, 295 NY 324). The affidavit of Dresdner's

legal expert, whose qualifications were most impressive, established that under the law of West Germany the two remittances made by Dresdner on March 31, 1972 to the plaintiff and to the office of the court cashier constituted full payment of the obligation due on that date and discharged Dresdner of any liability thereunder. The plaintiff offered no expert evidence to the contrary.

The relevant New York law is found in CPLR 5209, which reads: "A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, is discharged from his obligation to the judgment debtor to the extent of the payment or delivery."

The purpose of this provision is to protect a garnishee who pays a debt or delivers property pursuant to an execution or court order against a subsequent claim by the judgment debtor for the same debt or property (*Harris v Balk, supra; Lynch v Johnson,* 48 NY 27; *Gibson v Haggerty,* 37 NY 555). CPLR 6204, which is virtually identical to CPLR 5209, gives a garnishee who complies with an order of attachment the same protection (6 Weinstein-Korn-Miller, NY Civ Prac, par 5209.01; 7A Weinstein-Korn-Miller, par 6204.01) and the discharge of the garnishee's obligation to the judgment debtor must be recognized by the courts of sister states (*Harris v Balk, supra*).

Dresdner was clearly "a person who, pursuant to an execution or order, [paid] * * * to the judgment creditor [office of the court cashier] * * * money * * * in which a judgment debtor [Transcontinental] [had] * * * an interest, or so [paid] a debt he [owed] the judgment debtor"; it was therefore "discharged from * * * [its] obligation to the judgment debtor to the extent of the payment or delivery" (CPLR 5209; words in brackets supplied).

Further, this case is far stronger than the *Harris (supra)* case. Here, Dresdner, unlike the debtor in *Harris,* was not briefly in the jurisdiction where the debt was garnisheed. The note was attached in Frankfurt, the legal seat of Dresdner and the location of the office which issued it. Further, in *Harris* the debtor merely notified his creditor of the pendency of the Maryland proceedings and then defaulted. Dresdner not only notified Transcontinental, its attorney and the plaintiff of the proceeding, but also contested the order of attachment and

collection and took an appeal from the order which denied its objections.

The policy enunciated by the Supreme Court in *Harris* and reflected in CPLR 5209 and 6204 is that "it ought to be and it is the object of courts to prevent the payment of any debt twice over" *(Harris v Balk,* 198 US 215, 226, *supra).*

From the foregoing it is quite clear that under both German and New York law the plaintiff cannot succeed. If his position that payment in accordance with a valid order of attachment and collection did not discharge the obligation were to be upheld, an unconscionable result would be reached. Any creditor in the position of Transcontinental could cause its own creditor to attach property of its own debtor, yet such debtor's liability to his (prime) creditor would remain undiminished, i.e., the prime debtor would be subject to double liability.

Laws of foreign governments have extraterritorial effect only by comity. The principle which determines whether we shall give effect to foreign orders or decrees is public policy and, where there is a conflict between our public policy and application of comity, our own sense of justice and equity must prevail. Since the policy considerations behind our laws of attachment and enforcement of money judgments are similar to those of Germany with respect to the question presented in this case, there is no reason not to apply the pertinent German law.

Paragraph 12 of the settlement agreement, quoted above, provides that no right to reimbursement or set-off could be asserted if any court made claim that court fees had to be paid. This paragraph, by its terms, applies to a court claim against either party on account of costs. The obvious intent, and certainly the only fair intent, was to put the burden of court costs on the party who incurred them.

Audi was secondarily liable for 12,000 DM and, in accordance with the agreement, paid that amount and did not attempt to collect it from Transcontinental. Transcontinental left its court costs unpaid. Now the plaintiff, with no greater rights than those of his assignor, is seeking to deny Dresdner credit for satisfying his assignor's obligation to pay costs by a hypertechnical interpretation of paragraphs 4 and 12 of the agreement. His position is strikingly unfair.

Dresdner, which was not a party to the agreement, honored the order of attachment and collection. Its payment to the office of the court cashier was not a set-off or deduction by a

party to the agreement, but the payment of an outstanding debt unquestionably owed by Transcontinental. Thus, it had the same effect as a direct payment to the plaintiff and reduced Dresdner's liability on the note.

I see no contraindication in the language of the decision of the Frankfurt Superior Court, as quoted by the Special Term. The Frankfurt decision held that the attachment must be honored; clearly, the statement that Dresdner "is at liberty here to refuse the payment and to permit itself to be sued or else to settle the matter with the Debtor in the internal relationship" related to the fact that the rights, *inter sese,* of Dresdner and the plaintiff were not a matter of that court's concern. Dresdner could have refused payment of the full installment to the plaintiff and thus permitted "itself to be sued" as to its right to so withhold payment despite the agreement. The Frankfurt Superior Court properly left to this jurisdiction a matter which was of no concern to it, especially in view of the fact that the plaintiff and his assignor refused to appear in the attachment proceeding.

Further, the plaintiff's contentions of an improper exchange rate conversion are without merit (see *Hoppe v Russo-Asiatic Bank,* 235 NY 37).

As no triable issues of fact were raised, the order should be modified so as to grant summary judgment in favor of Dresdner, with $50 costs and disbursements.

RABIN, Acting P. J., HOPKINS, BRENNAN and MUNDER, JJ., concur.

Order modified, on the law, by deleting so much thereof as denied defendant's cross motion for summary judgment and directed plaintiff to serve a formal complaint, and by substituting therefor a provision that defendant's cross motion is granted. As so modified, order affirmed, with $50 costs and disbursements to defendant.