295 N.J. Super. 550 (1996)
685 A.2d 943
ROBERT S. DICKSTEIN AND JANET DICKSTEIN, PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., AND CHRISTINE M. BERNIUS, DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1996.
Decided December 9, 1996.
*552 Before Judges PETRELLA, WALLACE and KIMMELMAN.
*553 Lawrence D. Ross argued the cause for appellants-cross respondents (Bressler, Amery & Ross, attorneys; Lawrence D. Ross and Daniel T. Kopec of counsel; Mr. Ross, on the brief).
Robert S. Dickstein, pro se, argued for respondents-cross-appellants (Mr. Dickstein, attorney; Donna Russo, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) and Christine M. Bernius (defendants) appeal from summary judgment in favor of plaintiffs Robert S. Dickstein and Janet Dickstein (plaintiffs) ordering defendants to pay most of the funds withheld by Merrill Lynch to satisfy a tax levy on plaintiffs' account by the State of New York.
Defendants argue on appeal that the motion judge erred in granting summary judgment because: (1) New York Uniform Commercial Code § 8-317(4) authorized and required Merrill Lynch to comply with the tax levy; (2) New York law provided a complete defense to plaintiffs' claim; (3) plaintiffs suffered no legally cognizable damage as a result of Merrill Lynch's payment of the tax judgment against them; (4) there were fact issues as to damages and mitigation; and (5) the judgment against defendant Bernius was improper.
On cross-appeal plaintiffs argue that the judge erred in reducing damages.

I.
On February 23, 1994 plaintiffs filed a complaint in Bergen County, New Jersey, against Merrill Lynch and Bernius asserting that $8,975.63 was wrongfully withheld from plaintiffs' account. Defendants answered that the money was withheld in compliance *554 with a valid New York tax levy.[1]
The Dicksteins, New Jersey residents, earned income in New York in 1981. Robert Dickstein, an attorney, applied for an extension of time to file his required New York non-resident income tax return until June 15, 1982. However, it was not until October 1982 that plaintiffs filed their New York tax return on income of $198,886, and paid taxes of $18,229 on New York taxable income of $108,218.
On November 30, 1982, the New York Tax Compliance Bureau sent plaintiffs a notice and demand for tax due of $4,807.78, consisting of a penalty of $3,615.75 and interest of $1,190.26 for late filing and payment of taxes. On December 6, 1982, Dickstein[2] responded by tendering the interest due and requesting a waiver of the penalty. The Audit Division rejected his waiver request because "[r]easonable cause for late filing ha[d] not been established."
Dickstein neither paid the penalty nor sought any judicial remedy. Almost four years later, New York entered a tax warrant in the judgment docket in the County of Albany Clerk's Office on November 26, 1986 for $40.48 taxes due, $2,445.13 penalty and $2,873.16 interest. At no time thereafter did plaintiffs challenge the validity of that judgment in New York.
In 1991, plaintiffs opened a securities account with Merrill Lynch's Wayne, New Jersey office. Merrill Lynch is incorporated in Delaware with principal place of business in New York. In December of 1993, plaintiffs owned two mutual funds: Merrill Lynch Corporate Bond Fund Inc. and the Income Opportunities Fund 1999, Inc. Both funds were administered by Maryland corporations with principal offices in New Jersey. Merrill Lynch *555 served as the financial intermediary in purchasing these shares and plaintiffs' ownership interest was recorded in book entry form on Merrill Lynch's books in New York. By December 29, 1993, at plaintiffs' request, their account had been liquidated, resulting in a cash balance of $43,192.71 which was held by Merrill Lynch in safekeeping at Chase Manhattan Bank in New York.
Between 1989 and 1993, New York sent plaintiffs numerous collection letters. On December 21, 1993, New York issued a tax compliance levy to Merrill Lynch at its principal office in New York demanding payment of $8,975.63 without further process pursuant to N.Y. CPLR 5232(a). Bernius, an employee of Merrill Lynch in its Compliance Department, wrote plaintiffs in response to a telephone conversation with Dickstein wherein he asserted that the Tax Department had no jurisdiction over his assets since the account was maintained in New Jersey. Bernius informed Dickstein that Merrill Lynch would honor the levy unless it received an appropriate court order or a release of the levy by New York.
Dickstein again objected in writing on the same grounds the following day. He did not seek any court order and he made no effort to negotiate with New York in the apparent belief that his efforts would have been fruitless because New York knew it would be paid in full by Merrill Lynch.
On May 5, 1994, Merrill Lynch paid the full amount of New York's tax compliance levy.
Plaintiffs moved for summary judgment and defendants cross-moved for summary judgment. The motion judge considered the central issue as whether under New York U.C.C. 8-317(4) Merrill Lynch had the right to satisfy the levy at their New York offices. In concluding that Merrill Lynch did not have the right to so satisfy the levy, the judge found U.C.C. 8-317(4) inapplicable because the two mutual funds previously held by plaintiffs were Merrill Lynch funds issued in New Jersey making them New *556 Jersey assets.[3] The judge considered the cash balance held in the account to be an intangible asset not within N.J.S.A. 12A:8-317 or New York U.C.C. 8-317 and only capable of being levied upon at the place where the underlying transactions occurred, i.e., Merrill Lynch's Wayne, New Jersey office.
After the liability judgment was entered, the parties cross-moved for summary judgment as to damages. Judgment for $8,975.63 was entered in plaintiffs' favor. The parties then submitted certifications and briefs on the calculation of accrued interest and costs. After reviewing reports of certified public accountants submitted by each of the parties, the judge reduced the judgment to $5,704.14. The judge reasoned that even if New York had sued in New Jersey, plaintiffs would still have been responsible for paying the $3,600 penalty, but amounts in excess thereof would have been abated because of "confusion in communications between Dickstein and the Department of New York State Income Taxation."

II.
We reject defendants' initial argument that Merrill Lynch was authorized to satisfy the tax levy under Uniform Commercial Code 8-317(4).[4] While 8-317 pertains to investment securities, the Uniform Commercial Code does not apply to money. See N.J.S.A. 12A:8-102(1)(c); N.Y.U.C.C. 8-102(1)(c). Because plaintiffs *557 liquidated their mutual fund shares in December 1993 and the levy was satisfied in May 1994 from the cash balance, defendants' reliance on the cited section is misplaced. The judge correctly determined that issue.
Defendants next argue that the levy was valid and properly satisfied. Under the New York Tax Law § 692, the tax commission must give notice and make demand for payment by "mail to such person's last known address." N.Y. Tax Law § 692(b). When a taxpayer is a non-resident, the tax commission has six years from the date of the tax assessment to issue a warrant. N.Y. Tax Law § 692(c). A copy of the warrant must be sent to the taxpayer by certified or registered mail and such warrant must be filed with the County Clerk in Albany County. N.Y. Tax Law § 692(g). Upon such filing, the tax commission is "deemed to have obtained judgment against the taxpayer." N.Y. Tax Law § 692(e). Thereafter, the tax commissioner may proceed to enforce the judgment. N.Y. Tax Law § 692(g).
Pursuant to § 692, a tax warrant was filed and entered in the judgment docket for judgment debtors against plaintiffs. In New York, money judgments are enforced by levy. See N.Y. CPLR 5232. The issue is whether under the circumstances New York had jurisdiction over the monies held by Merrill Lynch in plaintiffs' account.
In deciding the issue, the motion judge relied on plaintiffs' interpretation of Prudential-Bache v. Commissioner of Revenue, 412 Mass. 243, 588 N.E.2d 639 (1992), where the Massachusetts Commission of Revenue (Commission) tried to levy upon a nonresident's brokerage account in Massachusetts to satisfy a tax judgment. The non-resident judgment debtor, a resident of Illinois, maintained a brokerage account with Prudential-Bache in Illinois. Prudential, a Delaware corporation with principal offices in New York, does business in Massachusetts. The Commission served a levy on Prudential in Massachusetts. After being served with the levy, Prudential brought an interpleader action under Massachusetts law for a declaration of the relative rights of its *558 customer, the judgment debtor, and the Commission. The Commission asserted that it was levying upon the judgment debtor's right to call upon a Massachusetts office of Prudential to execute a transaction. The court noted that while the debtor might have a contractual right to conduct this type of transaction, it was not a property right capable of being levied upon in Massachusetts. Id. at 246, 588 N.E.2d at 641. The court reasoned that the nonresident's property did not have sufficient contacts with Massachusetts to justify a levy in that forum under "traditional notions of fair play and substantial justice." Id. 588 N.E.2d at 642 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)). The non-resident judgment debtor transacted all of his business with Prudential in Illinois and those transactions were effectuated electronically in New York. Id. at 245, 588 N.E.2d at 640. Therefore, the non-resident never purposefully dealt with his investment accounts in Massachusetts or entered into any transactions therein.
Plaintiffs assert that Prudential-Bache supports their argument that New Jersey is the only place a levy could be effective on their account. Prudential-Bache, however, did not consider whether more than one forum may have jurisdiction over an intangible asset such as plaintiffs' account.
Generally, for a state court to acquire jurisdiction over property it must be located within the state's border. Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 1236, 2 L.Ed.2d 1283, 1293 (1958); Pennington v. Fourth Nat. Bank of Cincinnati, Ohio, 243 U.S. 269, 272, 37 S.Ct. 282, 283, 61 L.Ed. 713, 715 (1917). The property at issue here was plaintiffs' cash balance held on account by Merrill Lynch in New York.
When, as here, an investor deposits money with a financial institution a debtor/creditor relationship is created with the investor retaining intangible property of a debt owed to him by the institution. In re Interstate Dep't Stores, Inc., 128 B.R. 703, 705 (Bankr.N.D.N.Y. 1991) (citing Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 560 (2d Cir.1976)). The monies in plaintiffs' *559 account held by Merrill Lynch, after the liquidation of the mutual funds, were intangible assets and represented a debt owed by Merrill Lynch to the plaintiffs.
Pinpointing the exact location of an intangible asset for jurisdictional purposes is sometimes a cumbersome task. Justice Cardozo said:
The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found. At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions.
[Severnoe Securities Corp. v. London & Lancashire Inc. Co., 255 N.Y. 120, 123-124, 174 N.E. 299, 300 (1931) (citations omitted).]
Contrary to the motion judge's ruling that the only place plaintiffs' Merrill Lynch account could be levied upon was in New Jersey, the United States Supreme Court has stated that when property is intangible, jurisdiction over it may not be limited to one state. Hanson v. Denckla, supra (357 U.S. at 247, 78 S.Ct. at 1236, 2 L.Ed.2d at 1294); State Tax Comm'n of Utah v. Aldrich, 316 U.S. 174, 178-180, 62 S.Ct. 1008, 1010-11, 86 L.Ed. 1358, 1369 (1942).
Cash balances held in an account are considered debts owed by the financial institution to the investor. Commission for Polish Relief v. Banca Nationala A Rumaniei, 30 N.Y.S.2d 690, 262 A.D. 543 (N.Y. App. Div. 1941). The obligation to pay a debt remains with the debtor. Harris v. Balk, 198 U.S. 215, 222, 25 S.Ct. 625, 626, 49 L.Ed. 1023, 1026 (1905), overruled on other grounds by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).[5] The situs of the debt becomes less significant because the debt may be collected wherever personal jurisdiction can be attained over the debtor. Id at 223, 25 S.Ct. at 626-27. *560 "Hence, if the judgment debtor's debtor, the garnishee, is subject to the New York jurisdiction, the debt that he owes the judgment debtor can be levied on simply by means of the sheriff's serving upon the garnishee a copy of the execution." Siegel, Practice Commentaries, CPLR 5201.13 (1978) (citing N.Y. CPLR 5232(a)).
Jurisdiction over property must comport with "the fairness standard of International Shoe." Rush v. Savchuk, 444 U.S. 320, 328, 100 S.Ct. 571, 577, 62 L.Ed.2d 516, 525 (1980). In Rush, plaintiff brought suit in Minnesota against an Indiana defendant based upon the defendant's insurance carrier's doing business in Minnesota. The Supreme Court noted that the insurance carrier's presence in Minnesota was an adventitious event uncontrollable by defendant. The Court concluded that the defendant had not engaged in any "purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable, merely because his insurer does business there." Id. at 329, 100 S.Ct. at 577, 62 L.Ed.2d at 525 (citations omitted). There were no significant contacts between the litigation (an Indiana automobile accident) and the forum (Minnesota). The Court found it implausible to find the defendant subject to suit based upon the "debt follows the debtor" concept because in this case the debtor, an insurance carrier, did business nationwide. Id. at 330, 100 S.Ct. at 578, 62 L.Ed.2d at 526. The Supreme Court concluded: "defendant ha[d] no contacts with the forum and the Due Process Clause `does not contemplate that a state may make binding a judgment ... against an individual or corporate defendant with which the state has no contacts, ties or relations.'" Id. at 332-333, 100 S.Ct. at 579, 62 L.Ed.2d at 528 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 161, 90 L.Ed. 95, 104 (1945)).
Consistent with due process and notions of fairness, New York courts have long recognized that any property belonging to a person that is located within the state may be levied upon and is deemed a res over which the court may obtain jurisdiction. Jones v. McNeill, 51 Misc.2d 527, 273 N.Y.S.2d 517, 521 (Sup.Ct. 1966) *561 (citing CPLR 301; Civ. Prac. Act § 232; Ownbey v. Morgan, 256 U.S. 94, 110-111, 41 S.Ct. 433, 437-38, 65 L.Ed. 837 (1921); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), David-Zieseniss v. Zieseniss, 205 Misc. 836, 129 N.Y.S.2d 649, 657, 660 (Sup.Ct. 1954); Wachtel, New York Practice Under the CPLR, pp. 15-16; 1 Weinstein-Korn-Miller, N.Y. Civ. Prac., para. 301.-10). Here, New York State levied upon intangible assets held by the garnishee,[6] Merrill Lynch, in New York.
Under New York law, a levy is effective "upon any debt owed to the judgment debtor, by serving a copy of the execution upon the garnishee.... All property not capable of delivery in which the judgment debtor or obligor is known or believed to have an interest then in or thereafter coming into the possession or custody of such person, * * * shall be subject to the levy." N.Y. CPLR 5232(a). Here, New York effectively levied upon plaintiffs' funds because the funds were held by Merrill Lynch in New York and were subject to New York's jurisdiction. The levy upon plaintiffs' assets held by Merrill Lynch did not offend ordinary standards of fairness or due process because plaintiffs' assets were held in Merrill Lynch's New York office. Plaintiffs' account had significant contacts with New York. Plaintiffs engaged in purposeful activity directed at New York. They transacted with a business principally located in New York, even though by way of a New Jersey office. They knew or could reasonably expect their transactions were to be executed in New York and the funds were held there. In addition, this litigation relates to New York State which sought and obtained enforcement of its tax judgment in that forum. That judgment arose out of plaintiffs' ownership of New York real estate which generated taxable income in that state. Plaintiffs recognized that tax and paid it, albeit late. Therefore, the levy was valid in New York and defendants acted properly in honoring it.
*562 Hence, defendants are entitled to the protection accorded a garnishee who pays a judgment creditor in satisfaction of an execution or court order from assets in which the judgment debtor has an interest. See N.Y. CPLR 5209. N.Y. CPLR provides that such payment "discharge[s] his obligation to the judgment debtor to the extent of the payment." N.Y. CPLR 5209.[7] "The purpose of this provision is to protect a garnishee who pays a debt or delivers property pursuant to an execution or court order against a subsequent claim by the judgment debtor." Oppenheimer v. Dresdner Bank A.G., 50 A.D.2d 434, 377 N.Y.S.2d 625, 631 (App. Div. 1975), aff'd, 41 N.Y.2d 949, 394 N.Y.S.2d 634, 363 N.E.2d 358 (1977); Weg & Myers, P.C. v. Security Systems by Hammond Inc., 167 Misc.2d 1042, 641 N.Y.S.2d 1016, 1017 (Civ.Ct. 1996).
The rationale behind CPLR 5209 is that "it ought to be and it is the object of courts to prevent the payment of any debt twice over." Oppenheimer, supra (377 N.Y.S.2d at 632) (quoting Harris, supra, 198 U.S. at 226, 25 S.Ct. at 628). Merrill Lynch satisfied the plaintiffs' debt by paying the judgment and should not be made to pay it again.

III.
The motion judge erred in asserting that if New York tried to enforce its judgment in New Jersey the full amount of the assessment would not have been honored because of New York's delay and apparent miscommunication between its Tax Department and plaintiffs. Once a tax penalty assessment is reduced to judgment, it is treated like any other money judgment, Philadelphia v. Austin, 86 N.J. 55, 61, 429 A.2d 568 (1981), and will be *563 enforced under both the Full Faith and Credit Clause and under principles of comity. Id. at 63, 429 A.2d 568. Although New York's ability to sue in New Jersey on an exemplified copy of the New York judgment and demand Full Faith and Credit be given to it under the U.S. Constitution was not the subject of the motion proceeding, it would presumably be the inevitable result of the judge's decision. There is no doubt if the levy had not been paid by Merrill Lynch that was an obvious option.

IV.
Alternatively, defendants assert that plaintiffs were not damaged because a valid judgment against them was satisfied. Defendants correctly point out that an award to plaintiffs under these circumstances would be unjust. See Ench v. Bluestein, 52 N.J. Super. 169, 145 A.2d 44 (App.Div. 1958). In Ench, an attorney, entrusted with a client's funds, satisfied one of his client's debts despite allegedly being instructed to pay off a different debt. The court held that the attorney was entitled to a "quasi-contractual offset in respect to [paying off the wrong debt] to avoid unjust enrichment which otherwise would fall to the plaintiff at the expense of the defendant." Id. at 174, 145 A.2d 44; cf. Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171, 104 A.2d 288 (1954); George M. Brewster & Son, Inc. v. Catalytic Const. Co., 17 N.J. 20, 28, 109 A.2d 805 (1954).
"To establish unjust enrichment, plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994). Plaintiffs here would be unjustly enriched by the motion judge's ruling. They received a benefit when the tax judgment was satisfied. To make defendants also pay for plaintiffs' failure to contest the tax assessment would be unjust and in effect result in a windfall to plaintiffs. They would not only receive the benefit of the judgment against them having been satisfied, but also receive payment from the defendants who had satisfied that debt. Courts have the "inherent *564 power to prevent a potential double recovery or windfall." Citibank, N.A. v. Errico, 251 N.J. Super. 236, 247, 597 A.2d 1091 (App.Div. 1991) (citing Morsemere Federal Savings & Loan Ass'n v. Nicolaou, 206 N.J. Super. 637, 645, 503 A.2d 392 (App.Div. 1986)). As noted, New York CPLR 5209 is consistent with this approach. It was designed "to prevent the payment of any debt [by a garnishee] twice over." Oppenheimer, supra (377 N.Y.S.2d at 632). We do not countenance such a windfall.
We reject plaintiffs' argument that they would not be unjustly enriched, based on their claim of damage because their right to negotiate the assessed amount was thwarted by defendants honoring the levy. In essence, plaintiffs argue that their efforts to avoid paying the New York tax judgment for over a decade were derailed by defendants honoring the levy. Under the motion judge's decision, plaintiffs would realize a windfall and non-resident taxpayers would be encouraged to ignore foreign tax assessments.
Finally, we note that the motion judge made no findings of fact or conclusions of law concerning any bases for liability of defendant Bernius. Although our reversal results in dismissal of the claims against Bernius, nothing in the record warrants a claim against her personally.
The Judgment against defendants is reversed. The cross-appeal is dismissed.
NOTES
[1] New York State Department of Taxation and Finance, which had levied against plaintiffs' account, was not joined as a party to the litigation.
[2] Reference to Dickstein in the singular is to plaintiff Robert Dickstein.
[3] Presumably, the judge considered the proceeds to have retained the character of the mutual funds even after the accounts had been liquidated in 1993.
[4] A creditor may levy upon a judgment debtor's uncertificated securities, such as mutual fund shares, at the place where the financial intermediary, here Merrill Lynch, keeps its books. N.Y.U.C.C. 8-317(4) provides:

(4) The interest of a debtor in a certificated security which is in the possession of or registered in the name of a financial intermediary or in an uncertificated security registered in the name of a financial intermediary may be reached by a creditor by legal process upon the financial intermediary on the books of which the interest of the debtor appears. [Id. (emphasis added)].
[5] Shaffer held that a forum could not use quasi in rem jurisdiction to obtain personal jurisdiction over a defendant when the property had no nexus to the litigation. The holding in Shaffer is inapposite to our analysis because the Court is not concerned with obtaining personal jurisdiction over plaintiffs, but is concerned with defining where plaintiffs' assets are located.
[6] The person in possession or custody of the property or who is indebted to the judgment debtor is known as the garnishee. N.Y. CPLR 105.
[7] The official comment to the statute states that "CPLR 5209 is the garnishee's assurance that where he so delivers the property or pays the debt, the judgment debtor cannot afterwards make claim against the garnishee for it. Should the judgment debtor bring suit against the garnishee for the property or debt, for example, the garnishee can plead as a complete defense the delivery or payment to the judgment debtor's judgment creditor." Siegel, Practice Commentaries, CPLR 5209:1 (1978).