**FIREMAN'S FUND INSURANCE CO., Plaintiff,**

v.

**PLAZA OLDSMOBILE LTD., et al., Defendants.**

**FIREMAN'S FUND INSURANCE CO., Petitioner,**

v.

**Steven D'AMBRA, Community National Bank and Trust Company of New York, the Continental Insurance Company, Commercial Insurance Company of Newark, N.J., Boston Old Colony Insurance Company, Gregory Cappello, Steven Malla, Edith Murphy, Ann Marie Manzell and William Pisa, Respondents.**

No. CV 83–2213.

United States District Court, E.D. New York.

Sept. 17, 1984.

Kornstein, Veisz & Wexler, New York City, for petitioner Fireman's Fund Ins. Co.

Shaw, Goldman, Licitra, Levine & Weinberg, Garden City, N.Y., for respondent Community Nat. Bank.

Hendler & Murray, New York City, for respondent insurers.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a proceeding brought pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and N.Y.C.P.L.R. Sections 5225, 5227, and 5239, to enforce a judgment.

## I. FACTS

In September 1981 respondent Community National Bank learned that one of its depositors, respondent Steven D'Ambra, acting in conjunction with an officer of the Bank, had deposited checks issued by various insurance companies on the basis of fraudulent insurance claims made by D'Ambra and persons in association with him. On October 14, 1981, D'Ambra executed an agreement with the Bank. The Agreement recited that D'Ambra acknowledged that he was not entitled to the proceeds of the checks and that the Bank might suffer damages as a result of claims made by the insurance companies. The agreement provided that the Bank would pay interest on D'Ambra's accounts, and that "[n]o money shall be withdrawn from any of the above-named accounts until after the Statute of Limitations has expired for any civil suit. All funds which are on deposit at CNB in the above-named accounts on the date of this agreement shall be held by CNB in the accounts as collateral security to indemnify CNB for any loss it may incur as a result of any claims which may be made by any party including but not limited to, any insurance company, bank or individual." The agreement was modified on September 15, 1982 to enable D'Ambra to deposit additional funds to bring the total funds to at least $200,000, to be evidenced by two Certificates of Deposit for at least $100,000 each, all such funds to be subject to the security interest. Certificates of Deposit bear high interest. The Bank retained physical possession of the Certificates.

Independently of the above mentioned agreement, D'Ambra owes the bank $20,602.00 in outstanding loans.

On or about April 21, 1983 the respondent insurers commenced an action in New York Supreme Court, New York County, naming D'Ambra and the Bank as defendants, alleging that D'Ambra induced the respondent insurers to issue checks on the basis of fraudulent insurance claims, demanding a money judgment against D'Ambra, alleging that D'Ambra's accounts at

the Bank contain proceeds of these checks, and demanding that the Bank be declared a constructive trustee on behalf of the insurers for the funds in the accounts. No claim was made at the time that the Bank had injured the insurers, and no claim against the Bank for money damages was made (except for costs and attorney fees).

On March 15, 1984 the New York Supreme Court, New York County, granted respondent insurers an order of attachment directing the sheriff to levy upon the property of and debts owing to Steven D'Ambra. On March 19, 1984 the respondent insurers delivered this order to the sheriff of Richmond County. On or about March 21, 1984 the sheriff levied upon D'Ambra's accounts at the Bank, by serving the order upon the Bank.[1] On or about June 19, 1984 the levy lapsed by virtue of N.Y.C.P.L.R. Section 6214(e), which provides that "[a]t the expiration of ninety days after a levy is made by service of the order of attachment, or of such further time as the court, upon motion of the plaintiff on notice to the parties to the action, has provided, the levy shall be void except as to property or debts which the sheriff has taken into his actual custody, collected or received or as to which a proceeding under subdivision (d) has been commenced." Subdivision (d), it should be noted, deals with proceedings to compel the garnishee to transfer property or pay debts to the sheriff.

On June 21, 1984 we entered a money judgment in favor of petitioner against D'Ambra. Petitioner was a victim of D'Ambra's fraud.

On June 22, 1984 the respondent insurers moved before the New York Supreme Court for an order extending their levy *nunc pro tunc* from June 19, 1984 to June 19, 1985. On June 29, 1984, while said motion was still pending, the respondent insurers delivered an additional copy of the original order of attachment (dated March 15, 1984) to the sheriff of Richmond County. On July 2, 1984 the sheriff delivered

this copy of the original order to the Bank, thereby purportedly levying a second time upon D'Ambra's accounts.

On July 2, 1984 petitioner filed a transcript of this Court's judgment in petitioner's favor with the County Clerk of Richmond County, who then docketed the transcript. On July 3, 1984 petitioner delivered a writ of execution, signed by petitioner's attorney, and issued in the name of this Court and bearing the civil docket number of this Court's judgment (CV 83–2213), to the sheriff of Richmond County. On July 5, 1984 an under sheriff of Richmond County contacted petitioner and stated that the name on the execution should be changed to that of the New York Supreme Court, Richmond County. An agent of the petitioner then changed the name (not the docket number) by hand. Also on July 5, 1984, either before or after said change was made, the New York Supreme Court issued an order extending the respondent insurers' levy *nunc pro tunc* from June 19, 1984 to December 19, 1984. On July 6, 1984 the sheriff served petitioner's execution on the Bank.

On August 3, 1984 the respondent insurers amended their complaint in state court to assert a claim against the Bank for money damages.

## II. DISCUSSION

### A. APPLICABILITY OF STATE LAW

Under 28 U.S.C. Section 1962, a judgment rendered by a federal district court within a state operates as a lien upon property located in such state under the same conditions as a judgment rendered by a court of general jurisdiction of the state so operates. Further, such state may establish rules requiring a federal judgment to be docketed in a particular office before such lien attaches.

Under N.Y.C.P.L.R. 5018(b), "[a] transcript of the judgment of a court of the United States rendered or filed within the

---

**1.** There is some suggestion in petitioner's papers that the order of attachment was not intended to apply to the accounts. However, we see no merit in this suggestion, as the order of attach-

ment does not by its terms limit the type of property belonging to D'Ambra or debts owing to D'Ambra upon which the sheriff is authorized to levy.

state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the manner and with the same effect as a judgment entered in the supreme court within the county." A judgment creditor who has such a transcript so docketed, as petitioner did on July 2, 1984, need not meet the requirements of the Uniform Enforcement of Foreign Judgments Act, N.Y.C.P.L.R. Art. 54, in order to enforce the judgment as a New York judgment. *Knapp v. McFarland,* 462 F.2d 935, 938–939 (2d Cir.1972).

■ From the foregoing it can be seen that petitioner's rights herein are governed by state law, in the same manner as if petitioner had obtained a judgment from the New York Supreme Court. This is confirmed by Fed.R.Civ.P. 69(a), which provides in pertinent part that "[t]he procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, except that any statute of the United States governs to the extent that it is applicable." In the instant case, no applicable federal statute prevents the application of state law.[2]

**B. PRIORITY AS BETWEEN PETITIONER AND RESPONDENT INSURERS**

**1. PRIORITY AS BETWEEN AN ORDER OF ATTACHMENT AND AN EXECUTION SERVED UPON THE SAME OFFICER—IN GENERAL**

Petitioner argues that if petitioner obtains a judgment from this Court in the instant proceeding directing the Bank to turn over funds in the accounts to petitioner, such judgment will have priority over the respondent insurers' order of attachment. This argument obviously begs the question of whether petitioner is in fact entitled to such a judgment. In order to determine this, we must determine the

rights of adverse claimants to the funds. N.Y.C.P.L.R. Sections 5225, 5239. Petitioner's argument on this point is therefore of no avail.

N.Y.C.P.L.R. 6226 provides in pertinent part that "[t]he priority between an order of attachment and an execution ... is set forth in section 5234." N.Y.C.P.L.R. 5234(b) provides in pertinent part that "[w]here two or more executions or orders of attachment are issued against the same judgment debtor and delivered to the same enforcement officer, they shall be satisfied out of the proceeds of personal property or debt levied upon by the officer in the order in which they were delivered."

The respondent insurers delivered their order of attachment to the sheriff of Richmond County on March 19, 1984, long before petitioner delivered its execution to the sheriff of Richmond County. At first glance, therefore, it would appear that the respondent insurers' have priority over petitioner by virtue of N.Y.C.P.L.R. 5234(b). As will be seen, however, the issue is in fact somewhat more complicated.

**2. EFFECT OF EXPIRATION OF LEVY UPON UNDERLYING ORDER OF ATTACHMENT**

**a. THE PROBLEM**

■ The provision of N.Y.C.P.L.R. 6214(e) that a levy by service of an order of attachment becomes void in ninety days except as to property or debts which the sheriff has taken into his custody, collected or received, or as to which a special proceeding has been commenced to compel the garnishee to transfer property or pay debts to the sheriff, unless the levy is extended by court order, by its terms deals only with the expiration of the *levy,* and not with the expiration of the underlying *order of attachment*; consequently, an order of attachment remains valid and can be used to levy even beyond ninety days after its issuance, at least where no previous levy has expired under N.Y.C.P.L.R. 6214(e). *See*

---

**2.** For an example of a case in which a federal statute, 26 U.S.C. Section 6331(a) (dealing with IRS tax liens), *was* applicable, *see United States*

*v. Sterling National Bank & T.Co., of N.Y.,* 360 F.Supp. 917 (S.D.N.Y.1973), *affd in relevant part,* 494 F.2d 919 (2d Cir.1974).

*Freedom Discount Corp. v. Clune*, 32 A.D.2d 833, 302 N.Y.S.2d 465, 467 (1969). In the instant case, however, the sheriff made a levy on behalf of the respondent insurers which expired on June 19, 1984 by virtue of N.Y.C.P.L.R. 6214(e). The question therefore arises: when a levy is made by service on an order of attachment, and such levy expires pursuant to N.Y.C.P.L.R. 6214(e), and a different creditor serves an execution against the same debtor upon the same officer, and such officer thereupon levies upon the same property of the judgment debtor in the hands of the same garnishee (or upon the same debts owing to the judgment debtor by the same garnishee) as was previously levied upon, which shall have priority: the order of attachment or the execution?

### b. THE ALLEGED POWER TO RE-LEVY

There is dictum for the proposition that, when a levy expires pursuant to N.Y.C.P.L.R. 6214(e), a second levy can be made upon the same property in the hands of the same garnishee (or upon the same debts owed by the garnishee) simply by having the sheriff serve a second copy of the original order of attachment upon the garnishee, without obtaining an extension of the original levy. *National American Corp. v. Fed.Rep. of Nigeria*, 448 F.Supp. 622, 634 (S.D.N.Y.1978), citing *Freedom Discount Corp. v. Clune, supra*. The *National American* dictum, however, is not in fact supported by the *Freedom Discount* case. In *Freedom Discount*, a plaintiff obtained a default judgment against defendant. The trial court then authorized the defendant to serve an answer, but failed to explicitly vacate the default judgment. Plaintiff then obtained an order of attachment from the court. Plaintiff then caused an income execution to be issued, on the theory that the default judgment was still valid. By means of the *income execution*, the sheriff obtained and delivered to plaintiff $611.41 of defendant's wages. The trial court then explicitly vacated the default judgment, and ordered

plaintiff to repay the $611.41 to defendant. Plaintiff then asked the sheriff to use the *order of attachment* (which was now two years old) to levy upon the $611.41 in plaintiff's own possession. The Appellate Division authorized the levy, holding that the order of attachment was valid despite its age. The case thus involved only a *single* levy pursuant to an *order of attachment.*

■ The *National American* dictum, if true, would render N.Y.C.P.L.R. 6214(e) meaningless. If a creditor holding an order of attachment can have the sheriff levy over and over again simply by continually serving copies of the order upon the same garnishee, without ever attempting to compel the garnishee to turn over the property levied upon to the sheriff, and without obtaining a court extension order, the ninety-day period of N.Y.C.P.L.R. 6214(e) would be pointless. We therefore hold that, when a levy expires pursuant to N.Y.C.P.L.R. 6214(e), the sheriff cannot levy a second time upon the same property in the hands of (or debts owed by) the same garnishee without court approval. Consequently, the sheriff's purported second levy on behalf of the respondent insurers on July 2, 1984 was void, as the original levy expired June 19, 1984 and had not been extended.

The question remains, however, as to whether the underlying order of attachment remained valid in the sense of allowing the respondent insurers to retain the priority they acquired on March 19, 1984 by virtue of their service of the order upon the sheriff.

### c. THE SOLUTION

■ If, as we have held, an order of attachment cannot be used to effectuate a second levy upon property or debts as to which a previous levy has expired pursuant to N.Y.C.P.L.R. 6214(e), it follows that the order of attachment is equally ineffective to provide its holder with priority over competing creditors in such property or debts. The primary purpose of an order of attachment is to protect a plaintiff against actions by a defendant or garnishee and not to protect a plaintiff against other persons holding claims against such defendant.

We therefore hold that the respondent insurers ceased to have any priority in the accounts levied upon when such levy expired on June 19, 1984.

### 3. EFFECT OF PETITIONER'S SERVICE OF EXECUTION ON JULY 3

■ An order extending a levy which has lapsed pursuant to N.Y.C.P.L.R. 6214(e), such as the New York Supreme Court order dated July 5, 1984 extending respondent insurer's levy, is without prejudice to any rights acquired by third persons between the expiration of the levy (here June 19) and the issuance of the extension order (here July 5). *Kalman v. Neuman*, 71 A.D.2d 996, 420 N.Y.S.2d 287 (1979); *Seider v. Roth*, 28 A.D.2d 698, 280 N.Y. S.2d 1005 (1967). We must therefore determine whether petitioner acquired any rights by virtue of its service of its execution on July 3, 1984.

■ An execution issued to a New York sheriff should be issued in the name of a New York court, N.Y.C.P.L.R. 5230(b), even if the underlying judgment was rendered by a federal court. *Knapp v. McFarland*, 462 F.2d 935, 938 (2d Cir. 1972). Consequently, petitioner's execution issued in the name of this Court which petitioner served upon the sheriff on July 3, 1984, was defective (of course, it should be understood that the fact that an execution issued to a New York sheriff should be *issued* in the name of a New York court in no way changes the fact that the content of such execution should state in which court the underlying judgment was entered, N.Y. C.P.L.R. 5230(a)). However, we find that this defect is excusable. The error was trivial and understandable. The respondent insurers did not take any action in reliance upon the defect. The respondent insurers' own actions are considerably less understandable. The respondent insurers stood idly by for the ninety-day period following the levy of March 21, 1984, without commencing a special proceeding to compel payment by the Bank to the sheriff, and without moving for an order extending their levy. Petitioner, by contrast, acted diligently after obtaining a judgment

against D'Ambra on June 21, 1984, by serving an execution upon the sheriff almost immediately after the expiration of the ten-day stay upon enforcement of judgment provided by Fed.R.Civ.P. 62(a). A defect should be disregarded if a substantial right of a party is not prejudiced. N.Y.C.P.L.R. 2001.

■ For the above reasons, we conclude that petitioner has priority over the respondent insurers by virtue of petitioner's delivery of its execution to the sheriff on July 3, 1984, at a time when respondent insurers' levy had lapsed as of June 19, 1984 and had not yet been extended.

### C. PRIORITY AS BETWEEN PETITIONER AND RESPONDENT BANK

As already noted, New York law is controlling, as no applicable federal statute has been shown to conflict with it.

■ Under New York law, "[e]very debtor shall have the right upon … the issuance of any execution against any property of … a creditor, to set off and apply against any indebtedness … of such creditor to such debtor any amount owing from such debtor to such creditor, at or at any time after the [issuance of the execution], and the aforesaid right of set off may be exercised by such debtor against such creditor … notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to the … issuance of execution …" N.Y. Debtor and Creditor Law Section 151. In the instant case, since an execution has been issued against D'Ambra's property, the Bank has the right to apply the Bank's debts to D'Ambra against D'Ambra's debts to the Bank. This is so regardless of whether the Bank exercised its right of set off prior to the issuance of the execution. *Industrial Com'r v. Five Corners Tavern*, 47 N.Y.2d 639, 419 N.Y.S.2d 931, 393 N.E.2d 1005 (1979). Consequently, the Bank has a right of set off to the extent of its loans of $20,602.00 to D'Ambra. The question remains, however, of whether the Bank has any additional rights by virtue of its security agreement with D'Ambra.

We begin by noting that the security agreement does not give rise to any current debt of D'Ambra to the Bank. While it is possible that D'Ambra will ultimately be found liable to the Bank, either pursuant to N.Y.C.P.L.R. Article 14 (which provides for contribution among persons liable for the same injury to property), or else pursuant to the New York common law doctrine of indemnity, the agreement does not give rise to any current liability. Consequently, we hold that N.Y. Debtor and Creditor Law Section 151 does not give the Bank any rights against petitioner by virtue of the security agreement. Although there is dictum for the proposition that a garnishee (such as the Bank), in defending a suit brought against it by a judgment creditor (such as petitioner) may employ "all defenses and set-offs" which the garnishee might have had against the judgment debtor (here D'Ambra), *Industrial Com'r v. Five Corners Tavern*, 47 N.Y.2d 639, 646, 419 N.Y.S.2d 931, 934–935, 393 N.E.2d 1005, 1008 (1979), the text of the statute speaks only of "any indebtedness" of the judgment debtor to the garnishee, and says nothing about any other defenses (such as the existence of a security agreement) which the garnishee might assert in a suit brought by the judgment debtor.

Security agreements are generally governed by the Uniform Commercial Code, Article 9. N.Y.U.C.C. 9–102(1)(a). Although Article 9 does not apply to a transfer of any interest in a deposit account, N.Y.U.C.C. 9–104(*l*), the term "deposit account" does not include accounts, such as the instant accounts, which are evidenced by certificates of deposit, N.Y.U.C.C. 9–105(e). However, Article 9 does not apply "to any right of set-off". N.Y.U.C.C. 9–104(i). Any rights acquired by the Bank pursuant to the instant agreement constitute rights of set-off. *See* 9 N.Y. Jurisprudence 2d, Banks Section 302. Consequently, Article 9 does not apply here.

Petitioner argues that the security agreement in question is invalid because the Bank did not provide D'Ambra with consideration. However, the Bank agreed to pay interest on the accounts. While this consideration may seem somewhat flimsy, since the Bank would pay interest in the ordinary course of business in any event, we are not to concern ourselves with whether D'Ambra made a good bargain. Consequently, the agreement is not void for want of consideration.

Petitioner argues that a promise made by a potential garnishee to a potential judgment debtor to prevent any future judgment creditor from levying upon debts owed by the garnishee to the judgment debtor is invalid. While this is true, *Oppenheimer v. Dresdner Bank A.G.*, 50 A.D.2d 434, 377 N.Y.S.2d 625 (1975), *affd*, 41 N.Y.2d 949, 394 N.Y.S.2d 634, 363 N.E.2d 358 (1977), it does not follow that a garnishee may not assert against a judgment creditor rights which the garnishee has acquired *for its own benefit* from a judgment debtor.

We find that it would be inequitable to permit the Bank to assert rights under the instant security agreement against petitioner. The Bank claims these rights solely to indemnify itself against liability to third parties by virtue of any wrongdoing the Bank may have committed, either through negligence or through vicarious responsibility for the acts of its employee. Petitioner, by contrast, is an innocent party, and is in fact a victim of the very conspiracy for which the Bank may perhaps be vicariously liable, regardless of whether the specific funds fraudulently obtained by D'Ambra from the petitioner were or were not in fact deposited with the Bank. Consequently, we hold that the Bank has no rights against the petitioner by virtue of the agreement in question.

## D. PRIORITY AS BETWEEN RESPONDENT BANK AND RESPONDENT INSURERS

The rights of the Bank against petitioner under N.Y. Debtor and Creditor Law Section 151 by virtue of its loans to D'Ambra are equally applicable against the respondent insurers, as said law by its terms deals with orders of attachment as well as with executions. We make this determination on the basis of pendent jurisdiction.

### III. CONCLUSION

Pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, the Clerk is directed to enter a judgment with respect to petitioner FIREMAN'S FUND INSURANCE COMPANY'S claims against respondents STEVEN D'AMBRA, COMMUNITY NATIONAL BANK AND TRUST COMPANY OF NEW YORK, THE CONTINENTAL INSURANCE COMPANY, GREGORY CAPELLO, STEVEN MALLA, EDITH MURPHY, COMMERCIAL INSURANCE CO. OF NEWARK, N.J., BOSTON OLD COLONY INSURANCE CO., ANN MARIE MANZELLA and WILLIAM PISA, but the Clerk shall *not* close the file on this case. The judgment shall provide that respondent COMMUNITY NATIONAL BANK is directed to turn over all funds being held by respondent COMMUNITY NATIONAL BANK on behalf of respondent STEVEN D'AMBRA to petitioner FIREMAN'S FUND INSURANCE COMPANY (with the exception of $20,602.00 representing the amount of loans made by respondent COMMUNITY NATIONAL BANK to respondent STEVEN D'AMBRA), in partial satisfaction of petitioner FIREMAN'S FUND INSURANCE COMPANY'S previously obtained judgment against defendants GEORGE SIFF and STEVEN D'AMBRA. The judgment shall further provide that respondent STEVEN D'AMBRA shall appear for oral examination under oath by petitioner FIREMAN'S FUND INSURANCE COMPANY. The judgment shall further provide that any state court orders previously issued are superseded insofar as they are inconsistent with this judgment.

SO ORDERED.