**Gordon JONAS, Plaintiff,**

v.

**CITIBANK, N.A., Defendant.**

**No. 02 Civ.0497 RWS.**

United States District Court,
S.D. New York.

Feb. 8, 2006.

**412**

Gordon Jonas, New York, NY, Plaintiff, pro se.

Zeichner Ellman & Krause, New York, NY, By: Jason A. Nagi, for Defendant, of counsel.

## OPINION

SWEET, District Judge.

Defendant Citibank, N.A. ("Citibank") has moved pursuant to Rules 12(b)(5), 12(b)(6), and in the alternative, 56, Fed. R. Civ. P., to dismiss the amended complaint of plaintiff *pro se* Gordon Jonas ("Jonas") seeking damages for Citibank's compliance with a writ of execution and transfer of social security funds in his Citibank account. Jonas has cross-moved for summary judgment and default judgment. For the reasons set forth below, the Citibank motion is granted, and the motions of Jonas are denied.

This action is a paradigm of the problems created in *pro se* litigation when an aggrieved individual is betrayed by his counsel and thereafter fails to meet the requirements imposed upon all litigants, in this instance, of serving the defendant with his pleading. Jonas' day in court has extended for over four years, marked by difficulty, confusion, and misunderstanding. As will be demonstrated below, empathy does not constitute compliance.

### Prior Proceedings

Jonas, then represented by counsel, filed this action on January 1, 2002. It was assigned to the Honorable Richard M. Berman. The complaint sought punitive and compensatory damages from Citibank arising out of its compliance with an Execution and Final Demand dated July 17, 2000 (the Execution from New York City Marshal, Henry Daley ("the Marshal")). The complaint alleged that social security and disability benefits in Jonas' Citibank account were transferred in violation of law.

According to Jonas, Jonas' former counsel, Michael Bressler ("Bressler") discontinued this action against Citibank without his knowledge or permission. Jonas has alleged that Bressler was subsequently disbarred. A notice of dismissal pursuant to Fed.R.Civ.P. Rule 41(a)(1) was signed by Judge Berman and filed with the Court on April 23, 2002.

By notice of motion dated June 18, 2002, Jonas sought leave to "reinstate" this action. By endorsed memo dated June 27, 2002, Judge Berman directed Jonas to serve Citibank with process by July 9, 2002. By letter to the Court dated July 15, 2002, with a copy to Jonas, counsel stated that Citibank was never served with the summons and complaint dated January 22, 2002. By letter dated July 17, 2002, Jonas stated that he mailed the summons and original complaint to Citibank's counsel on or about June 24, 2002. Citibank, by letter dated July 23, 2002, with a copy to Jonas, reiterated that it was never served with process.

By order dated February 20, 2003, Judge Berman reinstated the action. Jonas filed an amended complaint dated October 30, 2003 (the "Amended Complaint") without Citibank's consent or leave of the Court and mailed a copy to Citibank's counsel.

By letter to Jonas dated November 4, 2003, Citibank's counsel rejected the Amended Complaint as a nullity as not having been served consistent with the Fed.R.Civ.P. On November 6, 2003, Jonas sought further explanation of counsel's rejection of the complaint he mailed. By letter dated November 11, 2003, Citibank's counsel explained that Jonas had not effected proper service and his time to do so had expired.

On January 25, 2005, Judge Berman filed a recusal and the action was reassigned.

On April 20, 2005, a status conference was held where, again, counsel for Citibank advised that Citibank was never served with process and by order dated April 26, 2005, Jonas was "strongly encouraged" to avail himself of any assistance that can be provided to him by the Pro Se Office with respect to the proper procedures for the service of the amended verified complaint, and provided the address, telephone, and room number of that office.

On or about May 3, 2005, Citibank received, by mail, a copy of the Amended Summons dated April 23, 2005 and the Amended Complaint dated October 30, 2003 (collectively, the "Amended Pleadings").

On October 28, 2005, the motion of Citibank and the cross-motions of Jonas were marked fully submitted.

### The Facts

The facts are set forth in the Citibank 56.1 Statement of Undisputed Facts and are not disputed except as noted.

On or about July 5, 2000, Citibank received a restraining notice with information subpoena dated June 28, 2000 (the "Restraining Notice") served by Jonas' judgment creditor, International Airline Employees F.C.U. ("IAEFCU") in an action entitled *International Airline Employees F.C.U. v. Gordon Jonas,* New York City Civil Court, Index No. 21164CV1999 (the "IAEFCU Action") in connection with a judgment in the sum of $13,798.92, entered against Jonas on June 6, 2000. On July 6, 2000, Citibank restrained account numbers 28550215 and 49146895 maintained in Jonas' name (the "Accounts") and responded to the subpoena in compliance with the Restraining Notice. On July 7, 2000, Citibank gave Jonas written notice that it had received and complied with the Restraining Notice as set forth above.

On July 12, 2000, Jonas made a motion in the IAEFCU Action to vacate the Restraining Notice (the "First Motion"). Citibank received a copy of the First Motion on July 14, 2000. By the First Motion, Jonas sought to vacate the Restraining Notice because he alleged that "[p]ursuant to the Social Security Act and the Insurance Law the funds restrained were exempt." On July 19, 2000, the Marshal delivered to Citibank a levy and final demand attaching a property execution and notice to garnishee dated July 17, 2000, in which he sought payment of the balance of the Accounts.

By order entered on August 12, 2000 (the "First Order"), the Civil Court denied the First Motion. On or about August 24, 2000, the Marshal delivered a copy of the First Order to Citibank and demanded payment consistent with the Execution.

On August 25, 2000, Citibank issued a cashier's check dated August 25, 2000 in the amount of $5,327.62 payable to the order of "Henry Daley, Marshal" (the "Check") and debited the Accounts in like amount.

On January 10, 2001, Jonas made yet another motion (the "Second Motion") to vacate both the Restraining Notice and Execution based on the alleged exempt status of the funds in the Accounts. By order dated January 23, 2001 (the "Second Order") the Second Motion was denied.

By decision and order dated May 10, 2002, the Appellate Term remanded the IAEFCU Action for further proceedings to determine the source and character of the funds seized by IAEFCU and the amount, if any, to be turned over to the judgment debtor, stating:

> As to the merits of defendant appellant's post-judgment motion to vacate a restraining notice, Mr. [Jonas'] documentary evidence established that the monies levied against by [IAEFCU] included private disability payments and Social Security disability payments, monies which are exempt from such levy. Since it cannot be determined on the present record whether defendants checking account consisted solely of deposits of exempt funds or a commingling of exempt funds with personal funds, we remand the matter for further proceedings to determine the source and character of the funds seized by plaintiff judgment creditor and the amount of exempt funds to be turned over to defendant.

### The Rule 12(b) And Summary Judgment Standards

In considering a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner*, 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In other words, " 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of

facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000); *accord Eternity Global Master Fund,* 375 F.3d at 176–77.

In considering Jonas' pleading and his other papers submitted in this matter, the Court is mindful that he is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993). Indeed, district courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (quotation marks omitted).

Pursuant to Rule 56, summary judgment maybe granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *SCS Communications, Inc. v. Herrick Co., Inc.,* 360 F.3d 329, 338 (2d Cir.2004). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal citations omitted). If, however, " 'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.' " *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,* 391 F.3d 77, 83 (2d Cir.2004) (quoting *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir.1996)).

### Citibank Was Not Properly Served

Fed.R.Civ.P. 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative ... shall dismiss the action without prejudice ...

Fed.R.Civ.P. 4(m). Courts in this district have dismissed cases where plaintiffs have failed to properly serve process upon entities that are named as defendants. *See e.g., Cioce v. The County of Westchester,* No. 02 Civ. 3603(HB), 2003 WL 21750052 (S.D.N.Y. July 28, 2003) (dismissing *pro se* complaint for failure to serve process where service was not made until more than 200 days after the institution of lawsuit); *Point–Dujour v. U.S. Postal Svc.,* No. 02 Civ. 6840(JCF), 2003 WL 1745290, at *3 (S.D.N.Y. Mar.31, 2003) (dismissing complaint for failure to serve defendants with process 19 months after being advised of service deficiency); *Allianz Ins. Co. v. Otero,* No. 01 Civ. 2598(LMM) (HBP), 2003 WL 262335, at *4–5 (S.D.N.Y. Jan.30,

2003) (dismissing complaint for lack of good cause in failing to serve process one-year and three months after defendants had put plaintiff on notice that service was improper).

■ Citibank was never served with the summons and original complaint. In correspondence on three separate occasions since July 15, 2002, Jonas was advised in writing that he had never served Citibank with process, that because Citibank was never served with a copy of the original complaint, he could not serve Citibank with the Amended Complaint by mailing same to counsel, that he could not amend the complaint unless he had received written approval from Citibank or leave of court, and that his time to have effected proper service had long expired.

By Court order of April 26, 2005, Jonas was advised to avail himself of any assistance that could be provided to him by the Pro Se Office. On May 5, 2005, Jonas mailed Citibank the Amended Complaint.

■ While courts may excuse failure to comply with Rule 4(m)'s 120 day service requirement for good cause, a mistaken belief that service was proper does not constitute good cause. *See Point–Dujour,* 2003 WL 1745290, at *2 ("plaintiff makes no claim that his failure to serve ... should be excused for good cause. To the contrary, he candidly admits that he believed [service was proper] and no further service was needed." (internal quotations omitted)). *See Allianz Ins. Co.,* 2003 WL 262335, at *3 ("Plaintiff has not demonstrated good cause for failing to serve defendant pursuant to Rule 4. Plaintiff has not established that the failure to effect timely service was the result of exceptional circumstances beyond his control.").

■ Similarly, neglect and inadvertence do not suffice to support good cause. *See Bakal v. Ambassador Construction,* No. 94 Civ. 584(JSM), 1995 WL 447784, at *2 (S.D.N.Y. July 28, 1995) ("the courts agree

that mere advertence or attorney neglect do not suffice [to establish good cause]"); *see also Astarita v. Urgo Butts & Co.,* No. 96 Civ. 6991(PKL), 1997 WL 317028, at *2, 4 (S.D.N.Y. June 10, 1997). ("As far as can be determined, no effort has *ever* been made to effect formal service. Accordingly, the amended complaint is dismissed") (emphasis in original).

As part of the determination of good cause for delay in service, courts have looked at the length of time it has taken to effect proper service after receipt of notice of the defect. *Point–Dujour,* 2003 WL 1745290, at *3 ("To date, nineteen months have passed during which the plaintiff has not made any effort to effect proper service, although he had ample notice and opportunity to do so. Since the plaintiff offers no explanation or reasonable excuse for his failure to complete service properly, dismissal is warranted."); *Allianz Ins. Co.,* 2003 WL 262335, at *4 (dismissing for lack of good cause where "defendants had put [plaintiffs] on notice of the [service] defect by including it as an affirmative defense in the answer" which was served "approximately one year and three months" prior to proper service).

Here, Jonas was on notice for 32 months that he had not properly served Citibank.

Courts have dismissed cases in similar instances noting that plaintiff's failure to seek an extension of time undermines the defense of good cause. *Allianz Ins. Co.,* 2003 WL 262335, at *4 ("Allianz never made a motion to extend the time for proper service within the original 120 days even though it was on notice of the service defect from defendants' Answer."); *Hutchinson v. New York State Correctional Officers,* No. 02 Civ. 2407(CBM), 2003 WL 22056997, at *10 (S.D.N.Y. Sept.4, 2003) ("In particular the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service,

including but not limited to whether plaintiff moved under Fed.R.Civ.P. 6(b) for an extension of time in which to serve the defendant." (internal quotations omitted)).

As the Supreme Court held in dismissing a complaint brought by an inmate proceeding *pro se*, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. U.S.*, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993); *Cioce*, No. 02 Civ. 3604(HB), 2003 WL 21750052 at *4 (S.D.N.Y. Jul.28, 2003) (same) (citing *McNeil*).

Further, because Jonas can still proceed against the judgment creditor, dismissal for failure to comply with Rule 4(m) is not prejudicial to Jonas. Indeed, the Appellate Term First Department appears to have determined that Jonas may be entitled to reimbursement from IAEFCU for any ill-gotten booty.

Jonas' long delay in service results in dismissal of the complaint for lack of jurisdiction.

### C.P.L.R. Section 5209 Bars Jonas' Claims

C.P.L.R. 5209, entitled "Discharge of Garnishee's Obligation," states as follows:

A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, is discharged from his obligation to the judgment debtor to the extent of the payment or delivery.

C.P.L.R. 5209 (1962).

C.P.L.R. 5209 has been understood to bar a judgment debtor's claim made against a garnishee for payment of a debt or delivery of property pursuant to an execution. *Oppenheimer v. Dresdner Bank A. G.*, 50 A.D.2d 434, 440, 377 N.Y.S.2d 625, 631 (2d Dep't.1975), *aff'd on other grounds*, 41 N.Y.2d 949, 394 N.Y.S.2d 634, 363 N.E.2d 358 (1977) ("The purpose of [C.P.L.R. 5209] is to protect a garnishee who pays a debt or delivers property pursuant to an execution or court order against a subsequent claim by the judgment debtor for the same debt or property"); *Weg & Myers, P.C. v. Security Systems By Hammond, Inc.*, 167 Misc.2d 1042, 1044, 641 N.Y.S.2d 1016, 1017 (1996) (same); *Chin Sung Yu v. Riggs National Bank of Washington, D.C.*, 248 A.D.2d 235, 670 N.Y.S.2d 187 (1st Dep't 1998) (noting that C.P.L.R. 5209 is a safe harbor for a judgment debtor's claims against a garnishee bank that complies with a sheriff's execution); *see also* C.P.L.R. 5209, Practice Commentaries, D. Siegel, Protecting the Garnishee ("[C.P.L.R.] 5209 is [the garnishee's] assurance that when [the garnishee] so delivers the property or pays the debt, the judgment debtor cannot afterwards make claim against [the garnishee] for it.") (1997).

As a result, Jonas' claims also must be dismissed on the merits because he is barred from looking to Citibank for payment pursuant to C.P.L.R. 5209.

### The Cross Motions Are Denied

For the reasons set forth above, jurisdiction has not been established over Citibank, given the failure of service.

The motion for a default judgment is based upon Citibank's failure to answer the Amended Complaint. It has, however, moved in timely fashion against the Amended Complaint, and the motion for a default is denied.

As for Jonas' cross-motion for summary judgment, even if it is assumed it is in proper form, no grounds to support the motion have been set forth.

Jonas has contended that the Marshal "notified Citibank of denial of these [plaintiff's allegedly exempt] funds" and that "Citibank ignored the Marshal's denial of the funds and made payment on August 30, 2000." Jonas appears to be referring to the City Marshal's Return of Execution dated September 5, 2000 (the "Return of Execution"). The Return of Execution states that the Execution was partially satisfied, not that the funds that were executed were returned by the Marshal to Citibank.

 Jonas has contended that because Citibank must have been aware that the funds in his account were exempt, Citibank should have conducted an investigation into the "status" of the funds. Jonas has cited no authority for such a proposition, which is contradicted by C.P.L.R. 5222(e) and 5239. The notice which must be provided to every judgment debtor who has property that is restrained pursuant to C.P.L.R. 5222(e) puts the burden on the debtor to oppose a levy. *See Johnson v. Chemical Bank,* No. 96 Civ. 4262(SS), 1996 WL 706893, at *4 (S.D.N.Y. Dec.9, 1996) ("It is the responsibility of the judgment debtor to arrange to release a restrained account." (citing C.P.L.R. 5239)).

Similarly, C.P.L.R. 5239 provides a mechanism for a debtor to commence a special proceeding to determine the rights in disputed property such as Jonas' alleged exempt funds. In addition, in the IAEF-CU Action, the Appellate Term directed the Civil Court to conduct a hearing as to whether the funds in Jonas' account were exempt funds, but it did not grant Jonas' motion to vacate the Restraining Notice, as Jonas has contended. The New York City Marshal executed the judgment before the Appellate Term directed a hearing to be held concerning the funds in Jonas' account. Accordingly, no grounds for summary judgment against Citibank have been established.

The Motion of Citibank for summary judgment is granted and the action is dismissed. The cross-motions of Jonas are denied.

It is so ordered.